## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LATARRIS SANDERS, | ) | CASE NO. 5:14-cv-02663 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MARGARET BRADSHAW, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Latarris Sanders ("Sanders"), challenges the constitutionality of his conviction in the case of *State v. Sanders*, Summit County Court of Common Pleas Case No. CR-2011-03-0796-A.  Sanders, represented by counsel, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on December 4, 2014.  On January 28, 2015, Warden Margaret Bradshaw ("Respondent") filed her Answer/Return of Writ.  (ECF No. 5.)  Sanders, through new counsel, filed a Traverse on April 10, 2015.[1]  (ECF No. 9.)  For reasons set forth in detail below, it is recommended that Sanders's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

---

[1]  Original counsel, Jana DeLoach, was replaced by Jonathan Sinn after the former was suspended from the practice of law.

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Sanders's conviction as follows:

> [*P2]  In March 2011, police executed a search warrant at 440 East York Street in Akron.  Following the search, the Grand Jury indicted Mr. Sanders for trafficking in heroin, possession of heroin, possession of cocaine, having weapons under disability, possession of criminal tools, driving under suspension, endangering children, and possession of marijuana.  Mr. Sanders moved to suppress the evidence found during the search, arguing that the visiting judge who issued the warrant did not have authority to issue it and that it was not supported by probable cause.  After the trial court denied Mr. Sanders's motion, he pleaded no contest to several of the charges.  The trial court found him guilty of those offenses, and sentenced him to eight years imprisonment.  Mr. Sanders has appealed the denial of his motion to suppress, assigning three errors.

*State v. Sanders*, Case No. 26396, 2013-Ohio-2672 at ¶2 (Ohio Ct. App., June 26, 2013).

## II.  Procedural History

### A.  Conviction

On April 6, 2011, a Summit County Grand Jury charged Sanders with one count of trafficking in heroin in violation of Ohio Revised Code ("O.R.C.") § 2925.03(A)(C)(6); one count of possession of heroin in violation of O.R.C. § 2925.11(A)(C)(6); one count of possession of cocaine in violation of O.R.C. § 2925.11(A)(C)(4), all with criminal forfeiture specifications; one count of having weapons while under disability in violation of O.R.C. § 2923.13(A)(3); one count of possessing criminal tools in violation of O.R.C. § 2923.24; one count of driving under suspension in violation of O.R.C. § 4510.11; two counts of endangering children in violation of 2919.22(A); and, one count of possession of marijuana in violation of O.R.C. §

2925.11(A)(C)(3).[2] (ECF No. 5-1, Exh. 1.)

On May 25, 2011, Sanders, through counsel, filed a "Motion to Compel Release of Search Warrant," which the State opposed.  (ECF No. 5-1, Exhs. 3 & 4.)  The trial court ordered the Akron Municipal Clerk of Court to produce the sealed affidavit, search warrant, and return for court inspection.  (ECF No. 5-1, Exhs. 5 & 6.)

On June 30, 2011, co-defendant Tiffany Nurse, through counsel, filed a motion to suppress arguing a lack of probable cause.  (ECF No. 5-1, Exh. 7.)

On August 11, 2011, Sanders's counsel also filed a notice to correct record and motion to suppress, joining in the co-defendant's motion.[3]  (ECF No. 5-1, Exh. 8.)  Sanders argued that the warrant was invalid on its face because it was signed by a visiting judge.  *Id.*

On August 17, 2011, the trial court held a suppression hearing.  (ECF No. 10-1.)  On August 25, 2011, Sanders and co-defendant Nurse filed post-hearing briefs (ECF No. 5-1, Exh. 9) focusing exclusively on whether the judge signing the warrant had authority to do so.  *Id.*  On September 27, 2011, Sanders's motion to suppress was denied.  (ECF No. 5-1, Exh. 10.)  The order addressed only the issue of the signing judge's authority.  *Id.*

On February 17, 2012, Sanders, through counsel, filed a renewed motion to unseal the affidavit and search warrant.  (ECF No. 5-1, Exh. 11.)  The trial court again ordered the production of the sealed affidavit, search warrant, and return for court inspection.  (ECF No. 5-1, Exh. 12.)

---

[2]  Several of the charges were also levied against a co-defendant, Tiffany N. Nurse.  (ECF No. 5-1, Exh. 1.)

[3]  Ms. DeLoach indicated that the motion filed on June 30, 2011 should have been filed in the name of Sanders and not the co-defendant.  (ECF No. 5-1, Exh. 8.)

On March 1, 2013, Sanders entered a no contest plea to trafficking in heroin, possession of cocaine, having weapons while under disability, driving under suspension, and one count of endangering children.  (ECF No. 5-1, Exhs. 13 & 14.)  The remaining charges were dismissed. *Id*.

On March 28, 2012, Sanders was sentenced to an aggregate prison term of eight years. (ECF No. 5-1, Exh. 15.)

**B.    Direct Appeal**

On April 13, 2012, Sanders, through counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court") raising the following assignments of error:

    1.    The search warrant at issue was void *ab initio* in that the warrant was not signed by a judge of competent jurisdiction.

    2.    The trial court erred in refusing to unseal the search warrant affidavit prior to the date set for trial.

    3.    The affidavit failed to provide probable cause to support issuance of the search warrant.

(ECF No. 5-1, Exhs. 16 & 17.) .

On June 26, 2013, Sanders's conviction was affirmed.  (ECF No. 5-1, Exh. 20.)

On August 12, 2013, Sanders, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio raising the following propositions of law:

    1.    The search warrant in the matter at hand is void *ab initio* because said warrant was not signed by a judge of competent jurisdiction.

    2.    The trial court erred and abused it's [sic] discretion in refusing to unseal the search warrant affidavit prior to the scheduled trial; furthermore the Ninth District erred affirming the trial court's decision on this issue.

-4-

3.      The affidavit supporting the search warrant at hand failed to provide
        probable cause to support issuance of said search warrant.

(ECF No. 5-1, Exhs. 21 & 22.)

On December 4, 2015, the Ohio Supreme Court declined to accept jurisdiction of the

appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).  (ECF No. 5-1, Exh. 23.)

**C.    Motion for Resentencing**

On November 7, 2013, Sanders, *pro se*, filed a motion for resentencing. (ECF No. 5-1, Exh.

24.)  On November 15, 2013, the motion was denied.  (ECF No. 5-1, Exh. 26.)

On December 13, 2013, Sanders, *pro se*, appealed the denial of his motion for resentencing.

(ECF No. 5-1, Exh. 27.)  On November 19, 2014, the state appellate court overruled Sanders's

assignments of error and affirmed the denial of Sanders's motion for resentencing.  (ECF No. 5-

1, Exh. 31.)  Sanders did not appeal this decision to the Ohio Supreme Court.

**D.    Federal Habeas Petition**

On December 4, 2014, Sanders filed a Petition for Writ of Habeas Corpus asserting the

following grounds for relief:

> **GROUND ONE**: The search warrant in the present case is void *ab initio* because
> said warrant was not signed by a judge of competent jurisdiction.
>
> *Supporting Facts*: City Akron Municipal Court judge signed the search warrant
> even though he was not sitting by assignment at the date of the signing. Police
> officers took the warrant to his home and he signed it there. Further, he was not
> paid for working at the time, nor did he seek such payment. Although the judge
> had been approved to sit in as a visiting judge for a period of time, he was not
> substituting for any Akron Municipal Court judge at the time the warrant was
> issued.
>
> **GROUND TWO**: The trial court erred and abused its discretion in refusing to
> unseal the search warrant affidavit prior to the scheduled trial date.

-5-

*Supporting Facts*: The trial court erred when it refused to unseal the affidavit of the warrant until the day of the trial. Because the warrant affidavit was not released until the day of trial, the Petitioner was unable to timely investigate its contents and raise any potential issue that was present within the warrant at such a late date. Because the trial court refused to open the warrant until the date of trial, the contents could not be addressed in a Motion to Suppress or any other motion necessary for justice.

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

**A.  Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.  Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally

default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's

---

[4] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense

-8-

impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough    a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995);  *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

## C.  Application to Sanders

While maintaining that Sanders's grounds for relief are not cognizable upon federal habeas review, Respondent alternatively argues that both grounds are procedurally defaulted.  As the Court agrees with the former assertion, the issue of default, in the interests of judicial economy, will not be addressed.  The United States Supreme Court has observed that federal

courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the courts determination of the case. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law); *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Swanigan v. Sherry*, 502 Fed. App'x 544, 546 (6th Cir. 2012).

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S.    , 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an

explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the

state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786  87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A. Ground One: Fourth Amendment - Judicial Officer Signing Search Warrant**

In his first ground for relief, Sanders takes issue with the state appellate court's determination that the judicial officer who signed the search warrant had authority under Ohio law to do so.  (ECF No. 9 at 7-12.)  Sanders relies entirely on Ohio statutes and case law.  *Id*.

Conversely, Respondent argues that Sanders was afforded an opportunity to fully and fairly litigate his Fourth Amendment claims under *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  (ECF No. 5 at 6-9.)  To the extent his claim is based on state law, Respondent contends it is not cognizable upon habeas review.  *Id*. at 14.

First, it is well-settled that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

*Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  As such, the

Supreme Court has explained that "it is not the province of a federal habeas court to reexamine

state-court decisions on state-law questions."  *Id*. at 67-68. *See also Bey v. Bagley*, 500 F.3d 514,

519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Indeed, the Sixth

Circuit has held that habeas courts "must defer to a state court's interpretation of its own rules of

evidence and procedure when assessing a habeas petition."  *Brooks v. Anderson*, 292 Fed. App'x

431, 437 (6th Cir. 2008) (quoting *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)).  Thus,

"errors in application of state law . . . are usually not cognizable in federal habeas corpus."

*Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). *See also Bugh v. Mitchell*, 329 F.3d 496, 512

(6th Cir. 2003); *Bey*, 500 F.3d at 519; *Coleman*, 244 F.3d at 542.  This Court cannot base habeas

relief on an alleged misapplication of Ohio law as to how visiting judges are assigned or the

extent of their authority.

Furthermore, a writ of habeas corpus generally cannot be granted on the ground that a

petitioner's Fourth Amendment rights were violated if the petitioner had an opportunity to

present the claim in state court.  *See Stone*, 428 U.S. at 494 (1976); *Wallace v. Kato*, 549 U.S.

384, 395 n. 5, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *accord Ewing v. Ludwick*, 134 Fed.

Appx. 907, 911 (6th Cir. 2005).  The United States Supreme Court has held that "where the State

has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in

an unconstitutional search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 494.  The

Sixth Circuit has found that the determination as to whether a petitioner has had "an opportunity

for full and fair litigation of a Fourth Amendment claim" requires a federal district court to make

-13-

two separate inquiries. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). First, the district court should ascertain "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Id*. Second, the district court must ascertain "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* Because the Sixth Circuit already has determined that "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is ... clearly adequate," this Court's role is confined to the second inquiry    namely whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *Id*.; *accord Bridges v. Bradshaw*, 2006 U.S. Dist. LEXIS 96749 (N.D. Ohio 2006).

Sanders's defense counsel filed a motion to suppress, a corrected motion to suppress, as well as a supplement to the motion to suppress. (ECF No. 5-1, Exhs. 7, 8 & 9.) Generally, these motions argued that the search warrant was invalid because the judge issuing the warrant was a visiting judge who was not sitting by assignment on the day or during the week he signed the warrant. *Id*. It is undisputed that a hearing was held on August 17, 2011 to address these motions. (ECF No. 10-1.) Testimony and other evidence was presented. *Id*.

On appeal, the state appellate court addressed Sanders's argument as follows:

> [*P3] Mr. Sanders argues that the search warrant was void at its inception because it was not signed by any of the six elected Akron Municipal Court judges. The issue raised by Mr. Sanders entails a question of law which we review *de novo*. *State v. Ross*, 9th Dist. No. 12CA010196, 2012 Ohio 6111, ¶7.

> [*P4] Regarding search warrants, Revised Code Section 2933.21 provides that "[a] judge of a court of record may, within his jurisdiction, issue warrants to search a house or place[.]" Similarly, Criminal Rule 41(A) provides that "[a] search warrant * * * may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction, upon the request of a prosecuting attorney or a law enforcement officer."

-14-

[*P5]  The warrant was signed by a retired judge who had been appointed by the Chief Justice of the Ohio Supreme Court to serve as a visiting judge in the Akron Municipal Court from January 2011 to March 2011.  None of the court's six elected judges, however, had requested that the visiting judge sit "by assignment" for them on that particular date.  Sanders argues, therefore, that the visiting judge lacked authority to issue the warrant and it is void.

[*P6]  Mr. Sanders's argument is without merit.  In Mr. Sanders's co-defendant's case, this Court noted that "Section 1901.10(B) of the Ohio Revised Code provides that, '[if] the volume of cases pending in any municipal court necessitates an additional judge, the chief justice of the supreme court * * * may designate a judge of another municipal court or county court to serve for any period of time that the chief justice may prescribe.'" *State v. Nurse*, 9th Dist. No. 26391, 2012 Ohio 6000, ¶ 5, quoting R.C. 1901.10(B); *see also* Sup.R. 17(B)(2) (providing that the chief justice of the Ohio Supreme Court may assign a retired judge "to temporarily serve as a judge on any municipal * * * court." ).  Although it is not clear from the record why the Chief Justice assigned the visiting judge who signed the search warrant in this case to serve on the Akron Municipal Court, Section 1901.10(B) establishes that the chief justice may designate a judge to serve in any municipal court for any period of time the chief justice may prescribe.  Superintendent Rule 17 also permits the chief justice to assign a retired judge to temporarily serve as a judge in a municipal court.  It follows that a judge appointed pursuant to this authority may validly sign a search warrant even if all of the elected judges are active at the time.

[*P7]  The police detective who sought the warrant testified that none of the regular municipal court judges were available at the time he contacted the visiting judge.  According to the detective, after he prepared the search warrant and an affidavit in support of it, he tried to contact the designated "signing judge."  When he was unable to reach the judge, he tried contacting the "felony judge," who was also unavailable.  He then went down a list of the other elected Akron Municipal Court judges and attempted to call each of them, but was unable to reach any of them.  He, therefore, called the visiting judge, and ended up driving to the judge's house to have the warrant signed.

[*P8]  Upon review of the record, we conclude that, consistent with our decision in *Nurse*, the visiting judge who signed the search warrant in this case was a "judge of a court of record" under Section 2933.21 and Criminal Rule 41(A). *Nurse* at ¶ 6.  Mr. Sanders has failed to establish that search warrant was invalid. His first assignment of error is overruled.

*Sanders*, 2013-Ohio-2672 at ¶¶3-8.

Here, it is undisputed that the trial court held a suppression hearing on the very issue of whether the visiting judge had authority to sign the search warrant.  (ECF No. 10-1.)  The trial court issued an order explaining why it found that the visiting judge had authority.  (ECF No. 5-1, Exh. 10.)  The state appellate court, on direct review, also fully addressed Sanders's claim as it related to the visiting judge.  *Sanders*, 2013-Ohio-2672.  The Sixth Circuit has made clear that a state court "need do no more than 'take cognizance of the constitutional claim and rule in light thereof.'"  *Riley*, 674 F.2d at 525 (quoting *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977)).  The state courts plainly satisfied this standard.  Though Sanders believes that the courts misapplied Ohio law, such a position does not provide grounds for habeas relief.  *See, e.g., Good v. Berghuis*, 729 F.3d 636, 640 (6th Cir. 2013) ("Applying our test to [petitioner's] case is straightforward.  [Petitioner] could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it.  He presented it again to the state appellate court, and the appellate court rejected it once more.  That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*.");  *accord Putrus v. Smith*, 2013 U.S. Dist. LEXIS 164923 (E.D. Mich. Nov. 20, 2013) ("[T]he relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided.  Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim 'is simply irrelevant.'") (*citing Brown v. Berghuis*, 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009));  *see also Cabrera v. Hinsley*, 324 F.3d 527, 531 (7th Cir. 2003) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right.");  *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002) ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does

-16-

not overcome the bar [set out in the Stone decision].")

In the instant matter, Sanders raised his Fourth Amendment claim before both the trial court, a state appellate court, and the Supreme Court of Ohio.  As such, any contention that his ability to present his Fourth Amendment claim was frustrated is untenable.  His first ground for relief is, therefore, not cognizable.

**B.  Ground Two: Fourth Amendment - Affidavit Supporting the Search Warrant**

Sanders's second ground for relief is not altogether clear.  He asserts that because the trial court had not ruled on his renewed motion to unseal the warrant affidavit, filed less than two weeks before trial was scheduled to begin, he opted to plead no contest.[5]  (ECF No. 9 at 2-6.)  He further avers that his trial counsel was not provided a copy of the affidavit supporting the search warrant until after his plea and sentencing.  *Id*. at 6.  Sanders contends that the affidavit supporting the search warrant contained no allegations that drug transactions occurred at the residence searched nor any allegation that drugs were seen at said residence.[6]  *Id*.

Sanders contends that the trial court abused its discretion by refusing to unseal the search warrant affidavit prior to the trial date.  (ECF No. 9 at 12.)  This Court, however, does not review state court decisions under an "abuse of discretion" standard.  Sanders does contend that his Fourth Amendment rights were implicated, but fails to articulate how the *Stone v. Powell*

---

[5]  According to the docket, the renewed motion to unseal the affidavit was filed on February 17, 2015.  Trial was scheduled to commence on March 1, 2012.  (ECF No. 5-1, Exh. 32.)

[6]  This Court has not been presented with the contents of the affidavit.  Sanders's statements contradict the state appellate court's determination that the affidavit "contains information indicating that Mr. Sanders lived at the York Road residence and was selling drugs from the house."  *Sanders*, 2013-Ohio-2672 at ¶11.

standard was violated.[7]  (ECF No. 9 at 13-14.)

Sanders presented his argument to the state court on appeal, which held as follows:

[*P9]  Mr. Sanders argues that the trial court incorrectly ordered the search-warrant affidavit to be held under seal.  According to him, his lawyers were not allowed to view the affidavit until after he appealed.  He also argues that, having finally seen the affidavit, it does not contain sufficient information for a judge to conclude that there was a fair probability that contraband or evidence of a crime would be found at 440 East York Street.

[*P10] A court issuing a search warrant is required to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit * * *, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant * * * a reviewing court is simply to ensure that the [trial court] had a substantial basis for concluding that probable cause existed." *George* at paragraph two of the syllabus.  "[R]eviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id*. at 330, citing *Gates*, 462 U.S. at 237, fn. 10.

[*P11]  Because the detective's affidavit remains sealed, this Court will not discuss the specific facts that were averred in it.  Contrary to Mr. Sanders' argument, however, it contains information indicating that Mr. Sanders lived at the York Road residence and was selling drugs from the house.  The information comes from more than just law enforcement officer's surveillance of the property.

[*P12]  Upon review of the affidavit, we conclude that the facts alleged in it gave the visiting judge a substantial basis for concluding that evidence of a crime would be found in the house at 440 East York Street.  The trial court, therefore, correctly rejected Mr. Sanders's argument that the affidavit was insufficient to support the issuance of a search warrant.  Mr. Sanders's third assignment of error

---

[7]  In two sentences, Sanders seems to suggest that his right to confrontation was violated by the state court's refusal to unseal the affidavit.  He cites no clearly established United States Supreme Court precedent stating that a criminal defendant's confrontation rights are violated where he opts to plead guilty.  The Court considers this undeveloped "argument" waived.

-18-

is overruled.

[*P13]  Regarding Mr. Sander's second assignment of error,[8] we note that he preserved this issue for appeal. In light of our resolution of the merits of Mr. Sanders's objections to the detective's affidavit, however, we conclude that the alleged error was not prejudicial. Crim.R. 52(A).  Mr. Sanders's second assignment of error is overruled.

*Sanders*, 2013-Ohio-2672 at ¶¶9-13.

A habeas court's function, when addressing a Fourth Amendment claim, is *not* to decide whether the state court's determination was ultimately correct.  Rather, as explained in the previous section, a federal habeas court merely inquires into whether a state's procedural mechanism, in the abstract, presents an opportunity to raise a Fourth Amendment claim and whether presentation of the claim was frustrated by a failure of that mechanism.

A similar argument to the one advanced by Sanders was presented in *Moore v. Wilson*, No. 5:07-cv-0537, 2008 U.S. Dist. LEXIS 91158 (N.D. Ohio, Aug. 18, 2008) (Gwin, J.).  Therein, the petitioner claimed that the sealing of the affidavit supporting probable cause for the search warrant frustrated the presentation of his claim, because he could not challenge the truth of the affidavit.  *Id*. at *10.  While conceding that the Fourth Amendment generally allows a defendant to inspect a copy of the affidavit supporting a search warrant, the *Moore* court noted that such a right is qualified, and the affidavit may be sealed where there is a compelling government interest, such as protection of a state's informant.  *Id*. at **10-11.

Here, Sanders asserts that the trial court refused to unseal the affidavit until after he

---

[8]  The second assignment of error alleged that "[t]he trial court erred in refusing to unseal the search warrant affidavit prior to the date set for trial."  2013-Ohio-2672.

accepted a plea deal.[9]  (ECF No. 9 at 2.)  Even if this statement is accurate, it does not necessarily

establish a *Stone* violation.  The *Moore* court's decision and analysis are directly on point:

> The Petitioner is unable to carry his burden of showing a defect in the process to
> challenge the sealing of the affidavit.
>
> * * *
>
> Additionally, the Petitioner had the opportunity to litigate and argue the issue of
> the sealed affidavit at the suppression hearing held by the trial court. In failing to
> litigate the issue at the suppression hearing, a Petitioner does not suggest any
> reliance on existing case law.  Furthermore, *Stone* does not require that the
> petitioner actually litigate a claim, but rather the petitioner have the opportunity to
> litigate a claim.  *Stone*, 465 U.S. at 489.  Therefore, the Court finds that the
> sealing of the affidavit was not an "unanticipated and unforeseeable application of
> a procedural rule which prevent[ed] state court consideration of the merits of the
> claim."  *Riley*, 674 F.2d at 527.
>
> Respecting comity and federalism, the Court will not conduct an *in camera* review
> of the search warrant affidavit.  The Petitioner incorrectly believes that the only
> way to determine whether the seizure of his vehicle was lawful is to examine the
> affidavit. [Doc. 33 at 3.]  The Sixth Circuit has held that the reasonableness of a
> search under the Fourth Amendment depends on "whether the totality of the
> circumstances justifies a particular sort of search or seizure.'"  *U.S. v. Keszthelyi*,
> 308 F.3d 557, 571-72 (6th Cir. 2002) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9,
> 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).  The state court performed an *in camera*
> review of the affidavit and determined that no violation of the Petitioner's Fourth
> Amendment rights occurred.  [Doc. 12-44 at 28.]  The state court satisfied
> Petitioner's desire to have an impartial examination of the affidavit.
>
> Despite the Petitioner's objections, he was given a full and fair opportunity to
> challenge the factual accuracy of the officer's claims that lead to his arrest and
> subsequent searches.  The Petitioner could have presented evidence that the
> officers lacked probable cause without examining the affidavit.  The trial court
> was aware of the statements made in the sealed affidavit.  If the Petitioner had
> presented evidence that satisfied the requirements for a *Franks* hearing, the trial
> court could have held a hearing.  The Petitioner fails to show that he presented
> such evidence.  Therefore, the Court finds that there was no failure of the state's
> procedural mechanism that would support federal review of the affidavit.

---

[9]  It is unclear why the affidavit was sealed, but, according to the state appellate the court,
it remained sealed at the time of its decision.  *Sanders*, 2013-Ohio-2672 at ¶11.

-20-

*Moore*, 2008 U.S. Dist. LEXIS 91158 at **11-14 (footnotes omitted).

Sanders again has failed to establish that Ohio's procedural mechanism for addressing Fourth Amendment claims was frustrated in this case.  While Sanders did file a motion seeking to unseal the affidavit supporting the search warrant (ECF No. 5-1, Exch. 3), he did not subsequently press the issue at the August 17, 2011 suppression hearing.  (ECF No. 10-1)  He also made no arguments with respect to the affidavit in his post-hearing supplemental brief. (ECF No. 5-1, Exh. 9.)  Both the motion to suppress filed the day before the hearing, as well as the supplement filed on August 24, 2011, focused solely on the issue of whether the visiting judge had authority to sign the warrant.  (ECF No, 5-1, Exh. 8.)

At the hearing, the trial judge indicated that she had reviewed the affidavit pursuant to Sanders's motion to unseal, and independently found probable cause for the search.  (ECF No. 10-1, Tr. 2.)  Sanders's counsel did not object to this determination.  As in *Moore*, Sanders could have presented evidence that the officers lacked probable cause without examining the affidavit, but did not do so.  (ECF No. 10-1.)  Instead, when the trial judge indicated that the only remaining issue was whether the signing judge had jurisdiction to authorize the search warrant, Sanders's counsel agreed.

> The Court:   The case is before the Court on a motion to suppress.  As part of that, the requests have been made that the previously-sealed search warrant be unsealed for Court review.
>
> I have had an opportunity to review that search warrant.  I find independently that there was probable cause for the search.
>
> As I understand it, the issue now becomes simply whether or not the signing judge was   had sufficient jurisdictional ability to confer jurisdiction on the search.

Is that correct?

Ms. DeLoach: Yes, Your Honor.

(ECF No. 10-1, Tr. 2-3.)

*Stone* is not violated where a petitioner had the opportunity to litigate a claim.  Here, Sanders and his counsel simply failed to fully avail themselves of the opportunity.  Though Sanders filed a renewed motion to compel, he cites no law indicating a state's procedural mechanism to raise Fourth Amendment claims is inadequate or frustrated where a defendant neglects to effectively litigate such claims at the first opportunity.  As observed by another federal district court in Ohio, "[c]ourts have consistently held that the 'relevant inquiry' in resolving the second question . . . is whether the 'habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided' by the state courts."  *Graham v. Warden, Chillicothe Corr. Inst.*, 2011 U.S. Dist. LEXIS 100516 (S.D. Ohio July 22, 2011) (citing *Wynne v. Renico*, 279 F. Supp.2d 866, 892 (E.D. Mich. 2003); *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996)); *accord Coleman v. Beighter*, 2014 U.S. Dist. LEXIS 98780 at *21 (N.D. Ohio May 20, 2014).  Finally, to the extent Sanders asserts the state court was required to articulate its reasons for denying his motion to unseal on the record, "[a]n alleged failure 'to make essential findings of fact' will not bring [a petitioner's] Fourth Amendment claim into the ambit of habeas review."  *Coleman*, 2014 U.S. Dist. LEXIS 98780 at *24.

The affidavit supporting the search warrant was independently reviewed by both the trial judge and the appellate court.  Sanders had the opportunity to challenge the validity of the warrant both before his plea and upon appeal.  As such, his Fourth Amendment claim is without

merit.  The procedural mechanism for raising his claim was not frustrated.

## V.  Conclusion

For the foregoing reasons, it is recommended that Sanders's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: December 18, 2015

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-23-